# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SYNTHIA JACKSON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-14864** |
| **FLORIDA PARISHES JUVENILE JUSTICE COMMISSION, et al.** | **SECTION: "G"(4)** |

## ORDER

Pending before the Court is Defendants Florida Parishes Juvenile Justice Commission and Florida Parishes Juvenile Detention Center's (collectively, "Defendants") "Motion for Summary Judgment."[1] Having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court will grant Defendants' motion.

## I. Background

The Florida Parishes Juvenile Justice Commission (the "Commission") is charged with operating and managing a juvenile detention facility in the 21st and 22nd Judicial Districts of Louisiana, including the Florida Parishes Juvenile Detention Center (the "Center").[2] In the petition, Plaintiff Synthia Jackson ("Plaintiff") alleges that on January 3, 1994, Plaintiff was hired as the manager of the Food Service Department of the Center.[3] Plaintiff alleges that she was not considered a member a management and was not entitled to the same perks as the white male members of management.[4] Plaintiff also alleges that Defendants only gave pay raises to the

---

[1] Rec. Doc. 23.

[2] Rec. Doc. 23-3 at 1.

[3] Rec. Doc. 1-1 at 1.

[4] *Id.* at 2.

security staff and management.[5]

Moreover, Plaintiff states that she took FMLA leave in June 2014 after major surgery, but she still received calls from the Center regarding work issues.[6] In August 2014, according to Plaintiff, members of management fired Food Service workers after allegedly finding questionable practices without first consulting with Plaintiff.[7] Furthermore, on August 15, 2014, Plaintiff alleges that she was presented with an Employee Rule Violation for "some vaguely stated failure to supervise the Food Service Department."[8] Plaintiff asserts that she then submitted two weeks' notice of her resignation, which Defendants accepted, but did not allow Plaintiff to continue working.[9] Plaintiff asserts that during her time working for Defendants, management rode bicycles during work hours without being disciplined, and other employees, including Plaintiff, had to perform additional duties as a result.[10] Plaintiff brings a Title VII claim alleging that she was discriminated against as an African-American female, as well as a Family & Medical Leave Act claim.[11]

Plaintiff filed the petition for damages in the 21st Judicial District Court for the Parish of Tangipahoa on September 19, 2016.[12] Defendants removed the case to this Court on September

---

[5] *Id.*

[6] *Id.* at 3.

[7] *Id.* at 4–5.

[8] *Id.* at 5.

[9] *Id.* at 4.

[10] *Id.*

[11] *Id.* at 6–7.

[12] Rec. Doc. 1 at 1.

21, 2016, asserting that this Court has jurisdiction over the action pursuant to 28 U.S.C. § 1331.[13]

On November 17, 2017, Defendants filed the instant motion for summary judgment.[14] On December 14, 2017, Plaintiff filed an opposition to Defendants' motion.[15] On December 19, 2017, Defendants filed a reply to Plaintiff's opposition.[16]

## II. Parties' Arguments

### A. *Defendants' arguments in support of the motion for summary judgment*

**1. Defendants argue that Plaintiff's Title VII claims ought to be dismissed because there was no adverse employment action under Title VII.**

Defendants first argue that they are entitled to summary judgment on Plaintiff's Title VII claims because she cannot establish a prima facie case of discrimination as she did not suffer an adverse employment action.[17] According to Defendant, Plaintiff "voluntarily resigned her employment under circumstances which do not show that she was constructively discharged."[18] As a result, Defendant argues that Plaintiff cannot establish a prima facie case of discrimination.[19]

Defendants assert that one of Plaintiff's primary job responsibilities was to monitor food use and keep records of food purchases and other costs of the Food Services Department.[20] Defendants contend that upon investigating the Food Service Department after becoming

---

[13] *Id.*

[14] Rec. Doc. 23.

[15] Rec. Doc. 30.

[16] Rec. Doc. 34.

[17] Rec. Doc. 23-3 at 3.

[18] *Id.* at 4–5.

[19] *Id.* at 5.

[20] *Id.*

concerned about its costs, Plaintiff's supervisor determined that members of the kitchen staff were regularly stealing food.[21] As a result, Defendants state that Plaintiff's supervisor received a written reprimand and Plaintiff was issued an Employee Rule Violation Report.[22] According to Defendants, Plaintiff was not facing termination because she was a "valued, long-term employee," but she immediately submitted her written resignation.[23]

Defendants contend that this case is similar to *Stover v. Hattiesburg Public School District*, where the Fifth Circuit determined that the plaintiff did not offer sufficient evidence to establish an intolerable environment that would compel a reasonable employee to resign under similar circumstances.[24] Defendants assert that Plaintiff's claim that she was underpaid because she was denied overtime compensation is "unavailing" because Plaintiff was a salaried Department Manager, who allegedly "was exempt from hourly pay."[25] Moreover, Defendants state that Plaintiff's claim that hourly employees received raises while she did not is baseless.[26] Defendants assert that only the security staff received pay increases "in order to stem turnover."[27] Defendants claim that other staff only received regular merit increases, which Plaintiff also received.[28] Moreover, Defendants assert that Plaintiff never submitted a grievance about her exempt status, her feeling that she was underpaid, or her feeling that she was uncomfortable or ridiculed by her

---

[21] *Id.* at 5–6.

[22] *Id.* at 7.

[23] *Id.* Defendants state that Plaintiff was not facing termination because "she was a valued, long-term employee." *Id.*

[24] *Id.* at 10 (citing 549 F.3d 985 (5th Cir. 2008)).

[25] *Id.* at 10.

[26] *Id.*

[27] *Id.*

[28] *Id.* at 10–11.

superiors.[29] Defendants then assert that being called at home while on FMLA leave or feeling ridiculed or embarrassed is not indicative of an "egregious" work environment under the standard set forth by the Supreme Court.[30]

Furthermore, Defendants assert that Plaintiff's allegation that her supervisor provided the State with the wrong date of her resignation is "baseless," as Plaintiff's last day of work was August 15, 2014.[31] Defendants aver that although Plaintiff stated that her resignation would be effective on August 29, 2014, she was not entitled to designate the effective date of her resignation because she was an "at-will" employee.[32] As a result, Defendants argue that the information provided to the State was accurate.[33]

Finally, Defendants contend that although Plaintiff may have been contacted while on FMLA leave, "it is not uncommon for employees out on FMLA leave to receive occasional telephone calls regarding work."[34] Moreover, according to Defendants, there are no records of such contact, nor are there records of Plaintiff complaining of the contact.[35] As a result, Defendants argue that Plaintiff "is unable to show that she was treated in the egregious manner . . . to transform a routine disciplinary action into the type of harassment and humiliation that would prod a reasonable employee to resign."[36]

---

[29] *Id.* at 11.

[30] *Id.* (citing *Pa. State Police v. Suders*, 542 U.S. 129 (2004)).

[31] *Id.*

[32] *Id.*

[33] *Id.* at 12.

[34] *Id.*

[35] *Id.*

[36] *Id.*

## 2. *Defendants argue that Plaintiff's FMLA claims ought to be dismissed because no violations of the FMLA occurred and Plaintiff has not suffered any prejudice as a result of any alleged violation*

Next, Defendants contend that they are entitled to summary judgment on Plaintiff's FMLA claims because no violations of the FMLA occurred or Plaintiff has not suffered prejudice as a result of any alleged violation.[37] According to Defendants, Plaintiff's petition contains claims of ten FMLA violations.[38] First, regarding Plaintiff's claim that Defendants failed to notify her of her FMLA rights, Defendants state that Plaintiff applied for FMLA leave once, and her application demonstrates that she was aware of her FMLA rights.[39] Moreover, according to Defendants, all employees were advised of their FMLA rights by the notices that were posted in the staff break rooms and the staff kitchen.[40]

---

[37] *Id.* at 13–19.

[38] *Id.* at 13–14. Defendants list the following as Plaintiff's claims in her petition:

1. Failure to notify employee of FMLA rights. (29 CFR 825.300-.301);
2. Failure to notify employee that leave counted towards 12-week FMLA entitledment. (29 CFR 825.208(b)(1)-(b)(2));
3. Counting FMLA leave against the firm's absentee policy for disciplinary purposes. (29 CFR 825.220(c));
4. Taking disciplinary action against employee for using FMLA. (29 CFR 825.220(c));
5. Failure to grant leave to provide physical care or psychological comfort to a seriously ill family member. (29 CFR 825.116(a));
6. Failure to reinstate an employee to same or equivalent position;
7. Terminating an employee during or at the conclusion of FMLA leave. (29 CFR 825.216);
8. Failure to grant FMLA leave because of a misunderstanding of what qualifies as a "serious health condition." (29 CFR 825.114);
9. Failure to request medical certification in writing and not giving employee at least 15 days to obtain medical certification. (29 CFR 825.305);
10. Failure to handle questions about the validity of a medical certification by guidelines set forth in FMLA regulations. (29 CFR 825.307).

*Id.* at 13–14.

[39] *Id.* at 15.

[40] *Id.*

Second, considering Plaintiff's claim that Defendants failed to notify her that leave counted towards her 12-week FMLA annual total, Defendants argue that Plaintiff has not shown that she has suffered any actual prejudice as the result of any alleged violation.[41] According to Defendants, Defendants granted in full Plaintiff's requested FMLA leave from June 6, 2014 to June 30, 2014.[42] Moreover, Defendants assert that Plaintiff did not request any additional leave in 2014, and she resigned on August 15, 2014.[43] As a result, Defendants aver that considering Plaintiff did not request any additional leave, any alleged failure to notify Plaintiff that her leave in June 2014 counted towards her 12-week annual total resulted in no harm.[44]

Third, Defendants assert that Plaintiff claims Defendants counted FMLA leave against Defendants' absentee policy for disciplinary purposes.[45] Defendants argue that this "claim is precluded because [Plaintiff's] FMLA leave was never reduced as a disciplinary measure due to any work absences."[46]

Fourth, considering Plaintiff's claim that disciplinary action was taken against her for using FMLA leave, Defendants argue that Plaintiff's "FMLA leave was never reduced as a disciplinary measure due to her use of FMLA leave."[47]

Fifth, regarding Plaintiff's claim that she was denied leave to provide care to a seriously ill family member, Defendants assert that Plaintiff never requested FMLA leave for that purpose and

---

[41] *Id.* at 16–17.

[42] *Id.* at 17.

[43] *Id.*

[44] *Id.*

[45] *Id.* at 18.

[46] *Id.*

[47] *Id.*

Defendants did not have knowledge that a family member required her care.[48] As a result, Defendants state that they were not in a position to deny or allow such leave.[49]

Sixth, addressing Plaintiff's claim that Defendants did not reinstate her to the same or equivalent position, Defendants argue that Plaintiff "was in fact reinstated to her former position, without a reduction in pay or any benefits."[50]

Seventh, regarding Plaintiff's claim that she was terminated during or at the conclusion of FMLA leave, Defendants aver that Plaintiff's leave ended on June 30, 2014, and she resigned on August 15, 2014.[51] As a result, Defendants assert that Plaintiff's claim is baseless.

Last, considering Plaintiff's claim that Defendants failed to grant Plaintiff FMLA leave because of misunderstanding of what qualifies as a "serious health condition," failed to request medical certification in writing, and did not provide Plaintiff 15 days to obtain medical certification, Defendants contend that Plaintiff was never denied FMLA leave.[52]

### B. *Plaintiff's arguments in opposition to Defendants' motion*

Plaintiff argues that there is sufficient summary judgment evidence in the record to indicate the presence of genuine issues of material fact.[53] Plaintiff states that she does not oppose Defendants' motion with respect to the FMLA claims, but she does oppose Defendants' motion with respect to her Title VII claim.[54] Plaintiff states that the management of the Florida Parishes

---

[48] *Id.*

[49] *Id.*

[50] *Id.* at 19.

[51] *Id.*

[52] *Id.*

[53] Rec. Doc. 30 at 7.

[54] *Id.* at 2.

Juvenile Detention Center has been all-white and all-male for a number of years, and this management "consistently employs a double standard with respect to personnel matters."[55]

Responding to Defendants' contention that Plaintiff was not facing termination because she was a "valued, long-term employee," Plaintiff questions, "[i]f this is true, then why did the [D]efendants accept the [P]laintiff's resignation?"[56] Plaintiff also states that Defendants would have allowed her to come to work during the period of her two weeks' notice.[57] Moreover, Plaintiff argues that the date of her termination was not August 18, 2014, as Defendants admit that they continued to pay her during the period of her two weeks' notice, but would not allow her to work during that period.[58]

Additionally, addressing Defendants' arguments regarding the alleged thefts in the Food Service Department, Plaintiff asserts that "[t]here are no documents submitted on this subject to substantiate the alleged problem."[59] Plaintiff asserts that Defendants' claim is "suspicious" considering they claim to have saved roughly $84,000 annually from addressing the alleged inefficiencies and cost overages of the Food Services Department, but surveillance footage shows two employees removing small food items with a total combined value of less than $100.[60] Plaintiff further avers that Defendants' assertion is "unconvincing," as Defendants "slept at the switch" when over two million dollars were embezzled in another case.[61] Plaintiff also states that in a

---

[55] *Id.*

[56] *Id.* at 3.

[57] *Id.*

[58] *Id.* (citing *Cotright v. Doyal*, 195 So. 2d 176 (La. App. 2d Cir. 1967)).

[59] *Id.* at 4.

[60] *Id.*

[61] *Id.*

similar case of alleged thefts in the Food Service Department, Defendants merely counseled, as opposed to have terminated, a white employee who was found to have removed food items from the Center.[62]

Plaintiff asserts that Defendants' reaction to the alleged thefts "confirms their long-standing discriminatory animus."[63] Plaintiff states that she, a black female, "was not consulted about the appropriate management response but instead was issued an ERV as apparently being considered as guilty by association."[64] Plaintiff avers that her white male supervisor received a written reprimand on Center stationery two weeks later which caused him to leave the Center in March 2015.[65]

Finally, Plaintiff states that Defendants do not dispute many of Plaintiff's allegations in the petition.[66] Plaintiff states that she alleged that from 2008-2014, the management rode bicycles without consequence while other employees worked and that the "lackadaisical attitude" of management created more work for female administrative staff members.[67] Moreover, Plaintiff states that Defendants do not dispute that the Center abolished its internal review board process, so "the Center's all white male management has complete control of the disciplinary process."[68] Plaintiff then asserts that her resignation resulted from "arbitrary and high-handed conduct of the Center's all-white management which [P]laintiff could no longer tolerate."[69]

---

[62] *Id.* at 5.

[63] *Id.*

[64] *Id.*

[65] *Id.*

[66] *Id.*

[67] *Id.* at 6.

[68] *Id.*

### C. Defendants' arguments in reply to Plaintiff's opposition

Defendants assert that Plaintiff "fails to discuss the standard for a constructive discharge."[70] According to Defendants, a claim of constructive discharge requires a greater degree of harassment than that required to establish a hostile work environment claim.[71]

Defendants then argue that rejecting Plaintiff's request for two weeks' notice is not indicative of constructive termination.[72] Defendants assert that accepting a resignation is not probative of intolerable working conditions and is not in itself an intolerable action on the part of the employer.[73] Defendants contend that requesting two weeks demonstrates that there were not intolerable working conditions "because an employee who is willing to work an additional two weeks under allegedly intolerable working conditions is probably not laboring under these alleged conditions."[74]

Defendants assert that it is not clear if Plaintiff is making a gender and/or race-based hostile work environment claim, but if she is, it also must be rejected.[75] Defendants argue that Plaintiff has not presented any "severe or pervasive evidence of race or gender discrimination . . . to suggest a finding of a hostile work environment."[76] According to Defendants, although Plaintiff states that she was not considered part of the executive staff of management, food services "is a function that

---

[69] *Id.* at 7.

[70] Rec. Doc. 34 at 1.

[71] *Id.* at 2 (citing *Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir. 1998)).

[72] *Id.*

[73] *Id.*

[74] *Id.* at 2–3.

[75] *Id.* at 3.

[76] *Id.* at 4.

does not deal with the overall administration of the Center."[77] Moreover, Defendants assert that Plaintiff does not show how bike-riding during the work day is an example of severe and pervasive harassment.[78] Finally, Defendants contend that Plaintiff has not countered Defendants' assertion that Plaintiff received the routine raises that all personnel were paid, but other raises were done "to stem personnel losses caused by low pay."[79]

### III. Legal Standard

#### A. *Standard for Summary Judgment*

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[80] When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[81] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[82] If the record, as a whole, could not lead a rational trier of fact to find for the nonmoving party, then no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law.[83]

---

[77] *Id.*

[78] *Id.*

[79] *Id.*

[80] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[81] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[82] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[83] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

On a motion for summary judgment, the moving party bears the initial burden of identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[84] "To satisfy this burden, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports an essential element of the opponent's claim or defense."[85] If the moving party satisfies its initial burden, the burden shifts to the nonmoving party to "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.[86] In doing so, the nonmoving party may not rest upon mere allegations or denials in its pleadings, but rather must set forth "specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."[87] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[88] There is no genuine issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[89]

---

[84] *Celotex,* 477 U.S. at 323.

[85] *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1991) (citing *Little v. Liquid Air Corp.*, 939 F.2d 1293, 1299 (5th Cir. 1991)).

[86] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

[87] *Morris*, 144 F.3d at 380 (citing *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992); *see also Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

[88] *Little*, 37 F.3d at 1075.

[89] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citing *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)).

Furthermore, it is well-established that "[u]nauthenticated documents are improper as summary judgment evidence."[90]

## B. Standard for a Title VII claim

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color . . . [or] sex . . . ."[91] A plaintiff may establish a violation of Title VII by proving that discrimination has created a hostile or abusive working environment,[92] or by proving disparate treatment on the basis of race or sex.[93]

The burden-shifting framework established in *McDonnell Douglas Corp. v. Green* governs claims alleging discrimination under Title VII.[94] To survive summary judgment in a case under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of discrimination or retaliation.[95] "To establish a prima facie case, a plaintiff need only make a very minimal showing."[96] If the plaintiff can establish a prima facie case, the burden will shift to the defendant to articulate a legitimate, nondiscriminatory purpose for an adverse employment action.[97] The defendant must point to admissible evidence in the record,[98] but the burden is one of

---

[90]  *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994).

[91] 42 U.S.C. § 2000e–2(a)(1).

[92] *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986).

[93] *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512 (5th Cir. 2001).

[94] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

[95] *Id.* at 802; *see also Mendoza v. Helicopter*, 548 F. App'x 127, 129 (5th Cir. 2013) (applying the *McDonnell Douglas* framework to discrimination and retaliation claims).

[96] *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996).

[97] *Id.*

[98] *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981).

production, not persuasion.[99] The defendant is not required to show that the employment decision was proper, only that it was not discriminatory.[100] "[E]ven an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason" for an adverse employment action.[101]

If the defendant satisfies its burden of production, the burden shifts back to the plaintiff to show that any non-discriminatory purposes offered by the defendant are merely a pretext for discrimination.[102] Plaintiff can do this by presenting evidence of disparate treatment or demonstrating that the proffered explanation is false.[103]

## IV. Analysis

### A. Whether Plaintiff has established a prima facie case for a Title VII disparate treatment claim

Defendants argue that Plaintiff's Title VII claims should be dismissed because Plaintiff has not suffered an adverse employment action.[104] Plaintiff argues that she faced an adverse employment action when Defendants refused to allow Plaintiff to work during the two weeks of her notice.[105] Moreover, Plaintiff also argues that she was constructively discharged because of

---

[99] *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000).

[100] *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 390 (5th Cir. 2007). *See also Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 325 (5th Cir. 2002); *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995) ("The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive.").

[101] *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991).

[102] *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

[103] *Id.*

[104] Rec. Doc. 23-3 at 3 (citing *Cotright v. Doyal*, 195 So. 2d 176 (La. App. 2d Cir. 1967)).

[105] Rec. Doc. 30 at 3.

"arbitrary and high-handed conduct of the Center's all-white male management which [P]laintiff could no longer tolerate."[106]

Courts analyze disparate treatment claims under the *McDonnell Douglas* framework.[107] Under *McDonnell Douglas*, the plaintiff bears the initial burden of establishing a prima facie case by showing that she:

> (1) is a member of a protected group, (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside [her] protected group or was treated less favorably than other similarly situated employees outside the protected group.[108]

Within the Fifth Circuit, not all negative workplace events constitute "adverse employment actions" cognizable under Title VII.[109] Rather, "adverse employment actions" consist of "ultimate employment decisions such as hiring, firing, demoting, promoting, granting leave, and compensating."[110] Denial of leave also constitutes an adverse employment action.[111]

Moreover, "[t]o prove a constructive discharge, a 'plaintiff must establish that working conditions were so intolerable that a reasonable employee would feel compelled to resign.'"[112] In determining whether a reasonable employee would feel compelled to resign, the Fifth Circuit has considered the relevancy of the following events:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a

---

[106] *Id.* at 7.

[107] *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (citing *McDonnell Douglas*, 411 U.S. at 802).

[108] *Id.* (citing *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir. 2005)).

[109] *Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014).

[110] *Id.*

[111] *Mota v. Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 522 (5th Cir. 2001).

[112] *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001) (citing *Faruki v. Parsons*, 123 F.3d 315, 319 (5th Cir. 1997)).

younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement [or continued employment on terms less favorable than the employee's former status] . . . .[113]

"Discrimination alone, without aggravating factors, is insufficient for a claim of constructive discharge, as is a discriminatory failure to promote."[114]

Here, Defendants do not dispute that Plaintiff is a member of a protected group, was qualified for the position at issue,  was replaced by someone outside her protected group or was treated less favorably than other similarly situated employees outside the protected group.[115] Instead, Defendants only argue that the evidence in the record does not establish that Plaintiff was discharged or suffered some adverse employment action.

As to whether Defendants actually discharged Plaintiff, in *Bourque v. Powell Electrical Manufacturing Co.*, the Fifth Circuit determined that a plaintiff was not actually discharged after she gave two weeks' notice of her intent to resign, but the employer decided the resignation was to be effective immediately.[116] As a result, Plaintiff's contention that she was actually discharged when Defendants did not let her work after giving two weeks' notice of her intent to resign is without merit.[117] Therefore, the Court must evaluate Plaintiff's contention that she was constructively discharged from her position.

Plaintiff states that she was constructively discharged because she was compelled to resign

---

[113] *Id.* (citing *Brown v. Bunge Corp.*, 207 F.3d 776, 782 (5th Cir. 2000)).

[114] *Id.* (citing *Boze v. Branstetter*, 912 F.2d 801, 805 (5th Cir. 1990); *Landgraf v. USI Film Prods.*, 968 F.2d 427, 429 – 30 (5th Cir. 1992), *aff'd*, 511 U.S. 244 (1994)).

[115] *See McCoy*, 492 F.3d at 556 (citing *Wheeler*, 415 F.3d at 405).

[116] 617 F.2d 61, 64 n.4 (1980).

[117] *Id.*

after witnessing a double standard with respect to personnel matters between the white male management of the Center and the African-American female administrative staff.[118] As stated above, the Fifth Circuit has determined that a plaintiff must show the existence of certain aggravating factors in order to assert a claim of constructive discharge.[119]

Here, regarding the first aggravating factor of demotion, Plaintiff has not alleged that she was demoted from her position.[120] Moreover, considering the second factor of reduction in salary, although Plaintiff alleges that she did not receive a raise while the security staff did receive one, Plaintiff does not allege that she faced a reduction in salary.[121] Third, considering the factor of reduction of job responsibilities, Plaintiff does not allege that Defendants reduced her job responsibilities.[122] Fourth, regarding whether Plaintiff was reassigned to menial or degrading work, although Plaintiff alleges that administrative staff members had to perform additional duties "to take up the slack caused by the management's dereliction of duty," Plaintiff does not describe these duties or allege that the work was menial or degrading.[123] Fifth, considering whether Plaintiff was reassigned to work under a younger supervisor, Plaintiff does not allege that she was reassigned, nor does she allege that she had to work under a younger supervisor.[124] Furthermore, Plaintiff does not allege that Defendants made any offers of early retirement or continued employment on terms less favorable than the employee's former status.[125]

---

[118] Rec. Doc. 30 at 2, 6.

[119] *See Brown*, 237 F.3d at 566.

[120] *See id.*

[121] *See id.*

[122] *See id.*

[123] *See id.*

[124] *See id.*

Thus, the only factor that Plaintiff appears to rely on to establish that working conditions were so intolerable that a reasonable employee would feel compelled to resign is "badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation."[126] In *Stover v. Hattiesburg Public School District*, the Fifth Circuit determined that a plaintiff's allegations did not amount to badgering, harassment, or humiliation.[127] In that case, the plaintiff, an African-American female, alleged that she was not provided the same career development opportunities as a white male in a similar position; she was not allowed comp time while others in similar positions were allowed comp time; her supervisor exhibited anger, violence, and shouting; her complaints of discrimination were not investigated; and she was excluded from prestigious retreats.[128]

Here, Plaintiff alleges that she was not provided pay raises in the same manner as security staff; she was not considered a member of management, despite being the manager of the food service department; she was not entitled to the same perks as male members of management; she was not consulted about the alleged irregularities in the Food Service Department; and Defendants abolished an internal review board that ensured that all employees were treated fairly.[129] As a result, similar to *Stover*, Plaintiff claims that she was denied career opportunities, both in terms of perks and salary, and Defendants did not properly investigate any potential disciplinary actions.[130] Unlike *Stover*, Plaintiff does not even allege that she witnessed anger, violence, or shouting by her

---

[125] *See id.*

[126] *See id.*

[127] 549 F.3d 985, 991–992 (5th Cir. 2008).

[128] *Id.*

[129] Rec. Doc. 1-1 at 2–8.

[130] 549 F.3d at 991–992.

supervisor or any of Defendants' management members.[131] Moreover, even if Defendants' actions did constitute badgering, harassment, or humiliation, Plaintiff does not allege that any actions by Defendants were "calculated to encourage [Plaintiff's] resignation."[132] Therefore, Plaintiff's allegations do not support a constructive discharge claim, and Plaintiff does not meet her burden of presenting a prima facie case for a Title VII disparate treatment claim. Accordingly, there are no genuine issues of material fact in dispute and Defendants are entitled to judgment as a matter of law on Plaintiff's disparate treatment claim.

### B. Whether Plaintiff has established a prima facie case for a Title VII hostile work environment claim

Although Plaintiff does not specifically address a hostile work environment claim in her opposition to Defendants' motion, she appears to make a Title VII hostile work environment claim in her petition.[133] In their reply to Plaintiff's opposition, Defendants assert that Plaintiff has not presented sufficient evidence of race or gender discrimination to support a hostile work environment claim.[134]

"Title VII is violated 'when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"[135] There are five elements necessary

---

[131] *Id.*

[132] *Brown*, 237 F.3d at 566.

[133] Rec. Doc. 1-1 at 6 (stating "[o]nly female and African-American employees resigned due to the hostility being exhibited by [Defendants'] management.").

[134] Rec. Doc. 34 at 4.

[135] *Vallevillo v. U.S. Dep't of Hous. and Urban Dev.*, 155 F. App'x 764, 766 (5th Cir. 2005) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

to set forth a hostile environment claim:

> (1) the employee is a member of a protected group; (2) the employee was subjected to unwelcome harassment; (3) the harassment was based on her membership in a protected class; (4) the harassment affected a term, condition, or privilege of her employment; and (5) her employer knew or should have known of the harassment and failed to take prompt remedial action.[136]

Moreover, "[i]n determining whether a hostile work environment exists, courts consider the 'totality of the circumstances,' including the frequency of the conduct, its severity, whether it is physically threatening or humiliating or 'a mere offensive utterance,' and whether it interferes with the employee's work performance."[137]

In *Gibson v. Verizon Services Organization, Inc.*, the Fifth Circuit determined that the plaintiff did not present sufficient evidence that her coworker's harassing behavior was based on sex or race.[138] The plaintiff alleged that her coworker left harassing comments on paper on her desk, refused to help her, lunged for a remote while she was watching television, had a history of bullying women, and acted erratically in response to a question from the plaintiff.[139] The plaintiff also alleged that a separate coworker kicked her desk three times and a third coworker made a racial statement in reference to President Obama's election.[140] The Fifth Circuit stated that the racial comment in reference to President Obama's election was the only conduct that had a nexus to race or gender, and considering the totality of the cirucmstances, the comment was "not a sufficient basis to impute a similar, racial intent to [the coworker's] separate, unrelated actions and

---

[136] *Gibson v. Verizon Servs. Org., Inc.*, 498 F. App'x 391, 394 (5th Cir. 2012).

[137] *Id.* (citing *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)).

[138] 498 F. App'x at 394.

[139] *Id.* at 393.

[140] *Id.*

infer that all the conduct was based on race."[141]

Here, Plaintiff alleges that she was not considered part of management, management routinely went bike riding during the day, she was not consulted about alleged irregularities in the department, and the internal review board was abolished.[142] However, unlike the plaintiff in *Gibson*, Plaintiff does not allege any behavior that demonstrates that the workplace was permeated with discriminatory intimidation, ridicule and insult. While the Fifth Circuit stated that one racial comment was insufficient to find that a plaintiff met her prima facie case for a hostile environment claim in *Gibson*, Plaintiff does not even present a single sex-based or race-based comment by any coworker or supervisor. As a result, Plaintiff has not met her burden of demonstrating a prima facie case for a hostile environment claim. Accordingly, there are no genuine issues of material fact in dispute and Defendants are entitled to judgment as a matter of law on Plaintiff's hostile work environment claim.

### C. Whether Defendants are Entitled to Summary Judgment on Plaintiff's FMLA Claim

Finally, Plaintiff states that she does not oppose Defendants' motion to the extent that it requests dismissal of Plaintiff's FMLA claim. Accordingly, because Plaintiff has pointed to no genuine issues of material fact Defendants are entitled to judgment as a matter of law on Plaintiff's FMLA claim.

### V. Conclusion

Considering that Plaintiff has not established a prima facie case of either her hostile environment claim or disparate treatment claim, the Court grants Defendants' motion to the extent it seeks dismissal of Plaintiff's Title VII claims. Moreover, considering that Plaintiff does not

---

[141] *Id.* at 394.

[142] Rec. Doc. 30 at 6–7.

oppose Defendant's motion to the extent that it requests dismissal of Plaintiff's FMLA claim, the Court will dismiss Plaintiff's FMLA claim.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' "Motion for Summary Judgment"[143] is **GRANTED.**

**NEW ORLEANS, LOUISIANA**, this ___15th___ day of August, 2018.

_Nannette Jolivette Brown_
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[143] Rec. Doc. 23.